UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICKEY L. JACKSON, | ) |
| Plaintiff(s), | ) |
| vs. | ) Case No. 1:03CV00160 ERW |
| UNITED STATES OF AMERICA, | ) |
| Defendant(s). | ) |

## AMENDED ORDER

The matter comes before the Court on Complaint for Return of Property [doc. #3] of Rickey L. Jackson ("Jackson") for return of personal property claimed to have been seized by law enforcement officials at the time of his arrest and confinement.

## FINDINGS OF FACT

The Court will begin by reciting from the parties' joint stipulation of uncontested facts. In the 1990's, the United States Drug Enforcement Administration ("DEA"), eventually the lead investigatory agency, the Bootheel Area Drug Task Force ("BADTF"), the Pemiscot County Sheriff's Department ("PCSD") and the Caruthersville Police Department began an investigation of Jackson. Mark Greer ("Greer"), special agent with DEA, was in charge of the investigation. On May 21, 1998, Jackson was indicted by a federal grand jury and a warrant was issued for Jackson's arrest. On May 22, 1998, Sgt. Jeffrey Heath ("Heath") of the Missouri State Highway Patrol ("MSHP") arrested Jackson in the presence of Greer, C.W. Kerley ("Kerley") of the BADTF, Deputy Christopher Riggs ("Riggs") of the PCSD and Officer Laramore of the MSHP. When arrested, Jackson was driving a 1997 Ford Expedition, VIN 1FMEU18W5VLB49207, which was equipped with "substantial post-factory stereo and video equipment and post-factory wheel rims that had been custom installed." The Expedition was towed to R & P Automotive in

Hayti, Missouri. Heath's completed vehicle record report reveals that items in the Expedition at the time of his arrest included miscellaneous clothing, a stereo and large speakers, a Nintendo 64, and compact discs, and Greer seized approximately $7,000.00 from the Expedition. Riggs transported Jackson to the Pemiscot County Jail to await transfer to the United States Marshal Service. Riggs searched Jackson, seizing two pagers and $1,510.00 in cash.

At Jackson's jury trial, Riggs testified, "I believe he had a - - possibly a watch, maybe a necklace." Kerley reported seizure from Jackson at the Pemiscot County Sheriff's Office, "a gold bracelet, a black Nike cap, two driver's licenses, two pagers, two black shoe strings, and a large amount of currency, from both front pockets." At the time the joint stipulation of uncontested facts was executed, Defendant could not account for the "bracelet, the Nike cap, the two Missouri driver's licenses and the two black shoe strings." On or about June 11, 1998, the Expedition was removed from the possession of R & P Automotive at the direction of Ford Motor Credit Company. Jackson was prosecuted in case no. 1:98CR00039 ERW. He was sentenced to life imprisonment.[1] Two pagers seized from Jackson were introduced at his trial by the Assistant United States Attorney who also introduced in evidence a poster showing Jackson wearing a bracelet and watch. Jackson was never indicted nor were charges ever brought against him by local or state authorities. No jewelry was introduced as evidence at Jackson's trial.

Jackson submitted answers to written requests for admission which establish that Jackson was arrested on a federal warrant on or about May 22, 1998; that the United States Drug Enforcement Administration was the lead agency in the investigation regarding the federal indictment; that at the time of Jackson's arrest, a bracelet was seized from him; that Defendant

---

[1] The statement of Jackson's sentence is not contained in the joint stipulation of undisputed facts.

cannot account for the whereabouts of the seized bracelet as of January 11, 2006; that at the time of his arrest, a black Nike cap was seized from Jackson and as of January 11, 2006, Defendant cannot account for that cap; that at the time of his arrest, two Missouri Driver's licenses and two pagers were seized from Jackson; that Defendant cannot account for the whereabouts of the two Missouri Licenses on January 11, 2006; that at the time of his arrest, a 1997 Ford Expedition was seized from Jackson, and photographs of the vehicle were introduced as evidence by the Assistant United States Attorney in Jackson's trial; that stereo and video equipment installed in the Ford Expedition was seized from Jackson as driver of the vehicle on May 22, 1998; that the Assistant United States Attorney introduced photographs of the stereo and video equipment at Jackson's trial; that when Jackson was arrested, wheel rims on the Ford Expedition were seized from him and photographs of the rims were introduced at Jackson's trial; that at the time of his arrest, there was clothing seized from the Expedition which has not been returned to Jackson, but was released to Mary Tousant, grandmother of Cameka Tousant, lessee of the Ford Expedition; that Exhibit A is a true and correct copy of the report of Jackson's arrest completed by Kerley of the BADTF; that Exhibit B is a true and correct copy of the vehicle report completed by Heath of the MSHP; that Exhibit C is a true and correct copy of testimony of Greer before the Grand Jury for the Southeastern Division of the Eastern District of Missouri; and that Exhibit D is a true and correct copy of testimony of Riggs of the Pemiscot County Sheriff's Office in the criminal trial of Jackson.

      The Court finds that the bracelet, undisputedly valued by Jackson at $18,500, was seized by Defendant and either lost by Defendant, or someone under the jurisdiction and authority of Defendant unlawfully appropriated the bracelet.

The Court finds that the black Nike cap, seized from Jackson, valued at $50.00 was either lost by Defendant, or someone under the jurisdiction and authority of Defendant unlawfully appropriated the Nike cap.

The Court finds that the two black shoe strings and two Missouri Driver's licenses seized from Jackson have only nominal value of $1.00. Those items were either lost by Defendant, or someone under the jurisdiction and authority of Defendant unlawfully appropriated the two black shoe strings and two driver's licenses.

The Court finds that all United States Currency was lawfully forfeited and Jackson has no recoverable interest in any United States Currency. The Court has already ruled adversely to Jackson on all claimed rights of Jackson to United States Currency. All of Jackson's claims for seized United States Currency are denied.

The Court finds that the clothing in the 1997 Ford Expedition was lawfully transferred to a representative of the lessee of the 1997 Ford Expedition. Mary Tousant, acting on behalf of Cameka Tousant, lessee of the 1997 Ford Expedition, signed a receipt for the clothing. All claims to the clothing by Jackson are denied.

The Court finds that the Nintendo 64 seized from Jackson had only a nominal value of $1.00. That item was abandoned by Jackson.

The two pagers introduced at Jackson's trial were delivered to Jackson in open court. Jackson's claims regarding the two pagers are denied.

## DISCUSSION

Fed.R.Crim.P. 41(g) provides that:

> A person aggrieved . . . by the deprivation of property may move for the
> property's return. The motion must be filed in the district where the property was

seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Property seized by the government in the course of a criminal investigation must be returned once criminal proceedings have concluded unless it is contraband or is subject to forfeiture. *See United States v. Albinson,* 356 F. 3d 278, 280 (3rd Cir. 2003). An Evidentiary Hearing on issues related to Jackson's action for return of property was conducted in this case on January 18, 2006. Post-conviction filings for the return of property seized in connection with a criminal case are treated as civil equitable actions. *See United States v. Story,* 170 F.Supp.2d 863, 866 (D. Minn. 2001). Jackson bears the burden of proof common in civil cases, which is by the greater weight or by a preponderance of the evidence. *See Mattingly v. United States,* 924 F. D 785, 788 (8th Cir. 1990). A defendant will generally be denied relief under this Rule, if he is not entitled to lawful possession of the seized property. *See United States v. Vanhorn,* 296 F. 3d 713, 719 (8th Cir. 2002).

Defendant does not dispute that Jackson was wearing the Rolex bracelet; that Defendant seized it incident to Jackson's lawful arrest; Defendant had possession of the Rolex bracelet, two driver's licenses, and two shoe strings which were, when seized, the property of Jackson, and Defendant cannot now account for the whereabouts of those items. Jackson is accordingly entitled to the lawful return of those items.

The Court is not permitted to award monetary sums where property lawfully seized is lost, misplaced or its location is unknown. *See United States v. Hall,* 269 F. 3d 940, 942-43. Instead, the Court should grant movant an opportunity to assert an alternate claim for money damages.

Jackson appears to confess that the 1997 Expedition was the rightful property of Ford Motor Credit Company, and he no longer appears to be making a claim to the vehicle, except he does make a claim for possession of the stereo/audio equipment and related accessories, clothing in the vehicle at the time of seizure of the vehicle and replacement wheel-rims on the vehicle at the time of seizure. To the extent Jackson continues to make any claim to the 1997 Expedition, the Court finds that Jackson had no recoverable interest in the 1997 Ford Expedition which was lawfully owned by the Ford Motor Credit Company, subject to a lease interest in Cameka Tousant. Cameka Tousant defaulted under the terms of the lease, and Ford Motor Credit Company lawfully executed its interest in the 1997 Expedition.

The credible evidence is convincing that Jackson was not wearing any wrist-watch or necklace at the time of his arrest. The Court finds that Jackson was not wearing, nor did he have in his possession at the time of his arrest, any watch or necklace of any description. Officers on the scene, when Jackson was arrested, offered credible evidence that Jackson had no watch or necklace on his body.

Carlos Kerley is currently employed with the Springfield, Missouri Police Department. He was present when Jackson was arrested as supervisor of the BADTF. Previously, he worked three years for the Highway Patrol. Jeff Heath of the Missouri State Highway Patrol made the arrest of Jackson on May 28, 1998. Officer Kerley is certain Jackson was not wearing a watch. He was standing above Jackson when Jeff Heath handcuffed him. While he confirms Jackson was wearing a bracelet, he is certain that Jackson had no watch or gold chain at the time of his arrest.

Jerry Carter is a Pemiscot County Deputy Sheriff who serves as custodian of records since 1989. Items seized from Jackson included the gold bracelet, Nike cap, driver's licenses, shoe strings and currency. There was no watch or necklace inventoried.

Robert Lockett is a police Lieutenant with the Caruthersville, Missouri Police Department. He had previously seen Jackson wearing a big necklace similar to one worn by Michael Irving of the Dallas Cowboys. He previously recalls Jackson wearing a gold bracelet, but not a gold watch. He was not present when Jackson was arrested.

Joey Christopher Riggs is a Lieutenant in charge of investigations with the Pemiscot County Sheriff's Office. After Jackson was arrested, Officer Riggs transported Jackson to the Sheriff's Office. At the scene of the arrest, he conducted a pat-down search of Jackson for weapons. He remembers Jackson having two pagers. He does not remember the Nike cap. He does not remember if Jackson had a gold bracelet, driver's licenses or shoe strings. He remembers that around $1,500.00 in currency was taken from Jackson and he possibly had a watch and maybe a necklace.

Mark David Greer is a special agent with the Drug Enforcement Agency. He was present when Jackson was arrested. He remembers that Jackson had currency in his two front pockets. He does not remember if Jackson was wearing any jewelry. He does not remember seeing a watch, necklace or bracelet.

Jeff Heath is a Missouri State Highway Patrolman who physically seized and arrested Jackson. When he handcuffed Jackson, he recalls seeing no jewelry on Jackson. He played no role in seizing any property from Jackson. No property was taken from Jackson prior to his arrest.

Jackson fails in his burden of proof to show that any watch or necklace was in his possession at the time of his arrest , or that any watch or necklace was seized by Defendant.

The Court further finds that Jackson had no recoverable interest in the replacement wheel rims, stereo/video equipment, large speakers and audio equipment, Nintendo 64 and any components in the 1997 Ford Expedition at the time of its seizure.[2]

The stereo/video and audio equipment was in the name of Cameka Tousant. When the Expedition was in the possession of R & P Automotive, the stereo/video and audio equipment was stolen or damaged. Cameka Tousant made an insurance claim for damage to the vehicle.

Ford Credit Company had lawful title to the 1997 Ford Expedition, and lawfully executed its interest in the vehicle and any equipment remaining on the vehicle at the time of re-taking of possession. *Goodrich Silvertown Stores of B.F. Goodrich Co. V. Brashear Freight Lines, Inc.,* 198 S.W.2d 357 (Mo. App. 1946) is not persuasive for Jackson. That case ruled that tires and tubes were not an integral and permanent part of the truck and could be removed without injury to the truck, and used elsewhere. When the Expedition was delivered from the factory, it obviously had wheel rims of some type. Wheel rims are a necessary component of the vehicle's mobility.[3] No claim was made against R & P Automotive for the rims on any bailment theory. Neither R & P Automotive nor Ford Motor Credit Company had notice that anyone was making a claim for any accessory equipment at the time of repossession of the vehicle or at any other time. Jackson certainly made no immediate claim to the replacement wheel rims or stereo/video or audio equipment, nor did he make any claims for months. Jackson put replacement wheel rims on a vehicle owned by Ford Motor Credit Company which was subject to a defaulted lease. Drug

---

[2] To the extent Jackson has any right to make any claim to the stereo and audio equipment under any trust theory, the Court will make alternative findings concluding that Jackson has no lawful claims to the stereo and audio equipment.

[3] There is evidence that the replacement wheel rims were stolen while in the possession of R & P Automotive.

dealers who put funds into property owned by others to avoid seizure of the property, or to make it more difficult for authorities to trace drug proceeds, assume risks of loss of some property rights. Any claim which Jackson ever had to those replacement wheel rims, stereo/video and audio equipment, or Nintendo has been abandoned by him. *See Herron v. Whiteside,* 782 S.W.2d 414, 416 (Mo.App. 1989). Abandonment is the voluntary relinquishment of ownership so that the property ceases to be the property of any person and becomes the subject of appropriation by the first taker. Abandonment of property requires intent plus an act. A sufficient act is one that manifests a conscious purpose and intention of the owner of personal property neither to use nor take the property into his possession. Intention to abandon may be inferred from strong and convincing evidence and may be shown by conduct clearly inconsistent with any intention to retain and continue the use or ownership of the property. *Id.* (Internal citations omitted).

Jackson was suspected of dealing large quantities of drugs in the Southeast Missouri area for a long period while being investigated by police authorities. After his arrest, he made no claim to the vehicle or any property connected to it in any way. Drug dealers frequently drive expensive automobiles with expensive accessories. When they claim ownership of those items, it is a means of obtaining cash to promote their drug dealing activities. When caught by police authorities, drug dealers frequently distance themselves from such objects, because there are frequently no employment records or tax records to support ownership of expensive items an inference is that wealth was accumulated by unlawful means. As here, drug dealers operate on a cash basis to further eliminate any trail which will lead police authorities to illegal activities. Jackson voluntarily relinquished any ownership intent he had in the replacement wheel rims, stereo/video and audio equipment, and Nintendo 64. He intended to relinquish ownership of those items and manifested a conscious purpose and intention neither to use or take possession of these items. Jackson

showed no interest in making claims to the property associated with the 1997 Expedition while he was being prosecuted. Only after his conviction did he assert ownership claims to the property connected to the Expedition. The Court finds that Jackson abandoned the replacement wheel rims, stereo/video and audio equipment, and Nintendo 64. Any claims for relief regarding the replacement wheel rims, stereo/video and audio equipment, and Nintendo 64 are denied.

Accordingly,

**IT IS HEREBY ORDERED** that Jackson's Complaint for Return of Property [doc. #3] is **GRANTED, IN PART and DENIED, IN PART.** Jackson is lawfully entitled to possession of the Rolex bracelet valued at $18,500; Nike cap valued at $50.00; two black shoe strings valued at $1.00; and two driver's licenses valued at $1.00. All other claims are **DENIED**.

**IT IS FURTHER ORDERED** that pursuant to this Amended Order the Motion to Amend Correct Findings [doc. #75] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File First Amended Complaint and to Transfer Monetary Damages Claims to Court of Claims [doc. #77] is **GRANTED**. Subsequent to this Court's Order and Judgment of August 29, 2006, Defendant has disclosed that it cannot produce the bracelet valued at $18,500.00; the black Nike cap valued at $50.00; the two black shoe strings valued at $1.00; and the two driver's licenses valued at $1.00. Because Rule 41(g) does not contain an express waiver of sovereign immunity, the Court is constrained by Eighth Circuit precedent and is unable to award monetary damages for the value of the these items. *See Hall*, 269 F.3d at 942-43. Nevertheless, the Court should still grant Jackson the opportunity to assert an alternate claim for money damages for these items. The Tucker Act waives sovereign immunity and allows money damages against the United States for "any claim against the United States founded either upon the Constitution, or any Act of Congress." 28 U.S.C. § 1491(a)(1). A Tucker Act claim

may be based upon an uncompensated taking under the Fifth Amendment. *See LaChance v. United States*, 15 Fed.Cl. 127, 130 (1988). Therefore, Jackson is entitled to pursue money damages under the Tucker Act for the uncompensated taking of his bracelet, black Nike cap, shoe strings, and driver's licenses.

This Court shares concurrent jurisdiction with the Court of Federal Claims only for Tucker Act claims against the United States "not exceeding $10,000." 28 U.S.C. § 1346(a)(2). Because the property Jackson is entitled to is valued at $18,552, only the Court of Federal Claims has jurisdiction over an alternate claim for money damages under the Tucker Act. 28 U.S.C. § 1491(a)(1). In the interest of justice, the Court will sever Jackson's claims relating to the bracelet, black Nike cap, shoe strings, and driver's licenses and transfer this action with respect to those claims to the Court of Federal Claims for further consideration of the merits of Jackson's action.

The First Amended Complaint, which is hereby deemed filed and will be transferred for consideration in the Court of Federal Claims, sets forth a claim for monetary damages under the Fifth Amendment for the uncompensated taking of Jackson's bracelet, black Nike cap, shoe strings, and driver's licenses.

The Court further acknowledges that Jackson's appointed counsel, Michael D. Murphy, is not admitted to practice before the Court of Federal Claims and is hereby relieved of his appointment with respect to the claims transferred to the Court of Federal Claims.

Accordingly,

**IT IS FURTHER ORDERED** that Jackson's claims for monetary damages with respect to the bracelet valued at $18,500; the black Nike cap valued at $50.00; the shoe strings valued at $1.00; and the driver's licenses valued at $1.00 are severed from this action and Jackson's First Amended Complaint is **TRANSFERRED** to the United States Court of Federal Claims for further adjudication of Jackson's monetary damages' claim.

So Ordered this 16th Day of November, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE